UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

U-SAVE AUTO RENTAL OF AMERICA, INC.           PLAINTIFF/COUNTER-
                                              DEFENDANT

v.                                            CIVIL ACTION NO. 3:15cv348-DPJ-FKB

ROBERT M. BARTON                              DEFENDANT/COUNTER-
                                              PLAINTIFF

ORDER

This case brought pursuant to the Federal Arbitration Act is before the Court on several

motions:  (1) Defendant/Counter-Plaintiff Robert M. Barton's Motion to Confirm Arbitration

Award [7]; (2) Plaintiff/Counter-Defendant U-Save Auto Rental of America, Inc.'s ("U-Save")

Motion to Vacate Award [16]; and (3) Barton's initial [9] and second [22] Motions for

Sanctions.  For the reasons that follow, the Motion to Confirm is granted, and the Motions to

Vacate and for Sanctions are denied.

I.      Facts and Procedural History

On October 1, 2005, U-Save hired Barton to serve as its Executive Vice President and

Chief Operating Officer.  The parties memorialized the relationship with an Employment

Agreement that contains a mandatory arbitration provision as well as sections governing

termination by U-Save "for Cause" and "without Cause."

Ultimately, U-Save purported to terminate Barton's employment "for Cause" effective

November 29, 2013.  Aggrieved, Barton filed a March 28, 2014 demand for arbitration with the

American Arbitration Association, asserting three claims for breach of contract.  First, he alleged

that U-Save breached a negotiated settlement regarding the terms of his separation.  In the

alternative, he argued that U-Save breached the Employment Agreement by failing to pay sums

due upon a termination "without Cause."  Finally, he argued that U-Save breached an additional section of the Employment Agreement related to its duties in the event of a change of control. Only the second claim is relevant in this lawsuit.

Following a two-day hearing and the submission of post-hearing briefs, the arbitrator issued an eight-page award concluding that U-Save lacked "Cause" to terminate Barton and was therefore liable for $596,645.44 in benefits due under the Employment Agreement's provision relating to termination "without Cause."  He also awarded pre-judgment and post-judgment interest.

U-Save filed its Complaint to Vacate Arbitration Award in this Court on May 8, 2015. Compl. [1].  Shortly thereafter, Barton moved to confirm the arbitration award and for sanctions, U-Save filed its Motion to Vacate, and Barton filed a second Motion for Sanctions.  The matters raised in the pending motions have been fully briefed; the Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Analysis

A.      The Cross-Motions Related to the Arbitration Award

1.      Standards

U-Save primarily seeks an order vacating the arbitration award under 9 U.S.C. § 10(a)(4), which permits a court to vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  Under Section 10(a)(4), an arbitration award may be vacated if the arbitrator acts contrary to explicit limitations on his authority in the arbitration agreement.  *See 21st Fin. Servs., LLC v. Manchester Fin. Bank*, 747 F.3d 331, 336 (5th Cir. 2014) ("If the

contract creates a plain limitation on the authority of an arbitrator, we will vacate an award that

ignores that limitation." (quoting *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397,

401 (5th Cir. 2007))).  Such limitations must be "plain and unambiguous," and all doubts must

be resolved in favor of arbitration.  *Id.*

Arbitrators may also "exceed[] their powers" if their award is completely untethered to

the contract.  As the Fifth Circuit noted in *BNSF Railway Co. v. Alstom Transportation, Inc.*,

> When an arbitration goes an opponent's way on the basis of questionable contract
> interpretation, parties often seek refuge in § 10(a)(4).  But the Supreme Court has
> made clear that district courts' review of arbitrators' awards under § 10(a)(4) is
> limited to the "sole question . . . [of] whether the arbitrator (even arguably)
> interpreted the parties' contract."

777 F.3d 785, 788 (5th Cir. 2015) (quoting *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064,

2068 (2013)).

A party challenging the arbitrator's award under this standard bears a "heavy burden."

*Oxford Health*, 133 S. Ct. at 2068.  "It is not enough . . . to show that the [arbitrator] committed

an error—or even a serious error."  *Stolt-Neilsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662,

671 (2010).  The question is "whether [he] interpreted the contract."  *BNSF Ry. Co.*, 777 F.3d at

789.  "Because the parties 'bargained for the arbitrator's construction of their agreement,' an

arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a

court's view of its (de)merits."  *Oxford Health*, 133 S. Ct. at 2068 (quoting *E. Associated Coal

Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)).

To determine whether the arbitrator arguably construed the contract,

> [s]everal pieces of relevant evidence can be gleaned from the award's text,
> including but not limited to:  (1) whether the arbitrator identifies h[is] task as
> interpreting the contract; (2) whether []he cites and analyzes the text of the

contract; and (3) whether h[is] conclusions are framed in terms of the contract's meaning.

*BNSF R. Co.*, 777 F.3d at 788.[1]

Finally, U-Save alternatively asks the Court to modify the award under 9 U.S.C. § 11(a), which allows a court to modify or correct the award "[w]here there was an evident material miscalculation of figures."  That standard will be addressed in greater detail later.

2.    Analysis

U-Save attempts to pigeon-hole seven alleged errors into the framework governing claims for relief under 9 U.S.C. § 10(a)(4):  (1) the arbitrator should have dismissed the arbitration for Barton's failure to satisfy a condition precedent to arbitration; (2) the arbitrator should have dismissed the arbitration as a sanction for Barton giving false testimony at trial; (3) the arbitrator erroneously shifted the burden of proof to U-Save; (4) the arbitrator awarded a lump-sum damage award not contemplated by the Employment Agreement, and his damage award was based on a mistake of fact; (5) the arbitrator erred in awarding pre- and post-judgment interest; (6) the arbitrator exceeded his authority by awarding benefits in excess of the amounts

---

[1]U-Save at least suggests a lighter standard by frequently quoting the following language: "Where arbitrators act contrary to express contractual provisions, they have exceeded their powers."  *See, e.g.*, Pl.'s Mem. [14] at 25 (quoting *21st Fin. Servs.*, 747 F.3d at 336).  This language seems to have originated in *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n*, 889 F.2d 599 (5th Cir. 1989).  And taken at its broadest, it might suggest that any error in interpreting the contract opens the door for judicial review.  But, as stated above, mere error is not enough.  Indeed, Fifth Circuit cases applying the *Delta Queen* language have "involved contractual provisions which limited the arbitrator's own authority and which the arbitrator had completely disregarded."  *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 805 n.17 (5th Cir. 2013) (distinguishing *Delta Queen*); *see also Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993) (distinguishing *Delta Queen* because there, the "arbitrator took an action forbidden by the underlying collective bargaining agreement").

Barton sought in his pre-hearing filings; and (7) the arbitrator's conclusion that the employment contract renewed on October 1, 2013, is inconsistent with his finding that Barton was terminated without Cause before November 1, 2013.  The Court will address each argument in turn.

a.      Condition Precedent

According to U-Save, "the arbitrator deviated from [his] authority and power by refusing to dismiss Barton's claim for Barton's failure to comply with the condition precedent to arbitration."  Pl.'s Mem. [17] at 3.  The arbitration provision states that "the Executive and the Employer shall comply with the Employer's grievance procedures in an effort to resolve [any] dispute or controversy [arising under or in connection with this Agreement] before resorting to arbitration."  Employment Agreement [2-1] at 7.

Absent contrary contract language, the application of a "procedural condition precedent" such as this ordinarily should be decided by the arbitrator and not reviewed by a district court. *See Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009). And nothing in the subject arbitration provision purports to limit the arbitrator's authority to rule on conditions precedent.  Instead, the Employment Agreement incorporates the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA").  Employment Agreement [2-1] ¶ 13.  AAA Rule 6 states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction . . . ."  And U-Save expressly invoked this rule when it filed its motion to dismiss with the arbitrator.  *See* Mot. to Dismiss [7-6] at 10.

U-Save argues, however, that the arbitrator exceeded his authority in the way he construed the contract.  As U-Save notes, the Employment Agreement contains a single "plain and unambiguous" limitation on the arbitrator's authority:  "The arbitrator shall not have the

5

authority to add to, detract from, or modify any provision hereof nor to award punitive damages to any injured party."  Employment Agreement [2-1] at 7.  And according to U-Save, the arbitrator breached this provision by failing to require Barton to exhaust grievance procedures—i.e., the arbitrator effectively re-wrote the Employment Agreement by removing exhaustion requirements, an applicable condition precedent to arbitration.

The arbitrator did not breach this provision.  Instead, he interpreted the Employment Agreement.  *See Oxford Health*, 133 S. Ct. at 2068.  Specifically, the arbitrator quoted from and construed the relevant contract provisions.  *See* Order [2-3] at 1.  Having done so, he found that the provision requiring "compliance with 'grievance procedures' before proceeding to arbitration" failed to "define or otherwise identify the procedures to which the section refers." *Id.*  He then rejected U-Save's argument that the required "grievance procedures" are contained in Section 4(c) of the agreement.  *Id.* at 1–2.  As he noted, Section 4(c) does not use the words "grievance procedures" and applies only to a termination for Cause.  *See* Employment Agreement [2-1] at 2.[2]

---

[2]Section 4(c) states:

Prior to termination for Cause, the Employer shall (I) provide the Executive with written notice describing in detail the actions taken by the Executive and the reasons why Employer believes that such actions constitute Cause, (ii) afford the Executive with the opportunity to attend a meeting of the entire Board of Employer at which he may make a presentation challenging the Employer's determination that Cause exists, which meeting shall not occur until ten (10) business days after Executive receives the written notice, and (iii) if, after such meeting, the Employer continues to believe that Cause exists, give Executive thirty (30) days to cure the basis for the Employer's determination that Cause exists.

The arbitrator did not "add to, detract from, or modify any provision" of the Employment Agreement; he simply interpreted it. U-Save's dissatisfaction with his interpretation does not require the Court to vacate the arbitration award. *See Why Nada Cruz, L.L.C. v. Ace Am. Ins. Co.*, 569 F. App'x 339, 342 (5th Cir. 2014) (finding arbitrator did not exceed powers by construing ambiguous provisions).

### b.      Perjury

U-Save argues "that the arbitrator deviated from [his] authority and power by failing to dismiss Barton's claim as a sanction for Barton giving false testimony at trial." Pl.'s Mem. [17] at 7. U-Save's position is that Mississippi law "mandates dismissal of a plaintiff's claim where the plaintiff gives false testimony." Pl.'s Mem. [17] at 14. But U-Save's argument addresses neither the arbitrator exceeding his contract authority nor a failure to arguably interpret the agreement. It is instead an argument that the arbitrator mis-applied Mississippi law, which provides no basis for vacating an arbitration award. *See BNSF Ry. Co.*, 777 F.3d at 789 (holding that question is "not whether [arbitrator's] interpretations of the Agreement or the governing law were correct").[3]

### c.      Burden of Proof

As with the perjury issue, U-Save claims "that the arbitrator deviated from his authority and power by shifting the burden of proof from Barton to U-Save to prove that there was no cause for his termination." Pl.'s Mem. [17] at 16. U-Save cites no relevant authority suggesting

---

[3]Even if the Court could vacate the arbitration award on the basis that the arbitrator got it wrong—which it cannot—the Court would not accept U-Save's argument that the arbitrator was required by Mississippi law to dismiss Barton's claims based on the evidence of "perjury" U-Save has presented to the Court. The sanction is a matter of discretion. *See* Def.'s Mem. [8] at 10–11.

that Barton carried the burden of proof on this precise issue, which Barton classifies as an affirmative defense.

Regardless, this claim does not implicate the arbitrator exceeding the contractual limitations on his authority or failing to interpret the agreement. A review of the eight-page award shows that the arbitrator clearly endeavored to interpret the Employment Agreement's provisions related to termination "for Cause" and "without Cause" and concluded that the reasons offered by U-Save in support of its termination of Barton's employment did not constitute "Cause" under the agreement. The arbitrator did what he was asked to do—interpret the agreement. So, even assuming U-Save is correct that the arbitrator erred in allocating the burden of proof, that is not a basis for vacatur under 9 U.S.C. § 10(a)(4).

d.      Damage Award

U-Save claims that the arbitrator "deviated from his authority and power by awarding a lump-sum, money damages type of award for the health insurance benefit where the benefit was limited to continued participation in U-Save's health plan at U-Save's expense up until the point U-Save was no longer required by law to provide continuation coverage." Pl.'s Mem. [17] at 17. But the arbitration provision did not limit the arbitrator's authority with respect to damages, other than to forbid him from awarding punitive damages. Employment Agreement [2-1] at 7. The arbitrator quoted from and construed the agreement, concluded U-Save breached it, and fashioned a damages award that did not include punitive damages, all of which were within his authority.

U-Save appears to argue, however, that because the Employment Agreement provided Barton's entitlement to certain benefits in the event of a termination without Cause, the arbitrator

8

was limited to ordering specific performance of those benefits.  *See* Pl.'s Mem. [17] at 22.
Nothing in the Employment Agreement so limited the arbitrator's authority.  And even assuming
the arbitrator "grossly erred" in construing the contract and applying the law, those alleged errors
would not be reviewable because he clearly interpreted the contract.  *BNSF Ry. Co.*, 777 F.3d at
789 (citation omitted); *see also 21st Fin. Servs., L.L.C.*, 747 F.3d at 336 ("A reviewing court
examining whether arbitrators exceeded their powers must resolve all doubts in favor of
arbitration." (citation and internal quotation marks omitted)).

In the alternative, U-Save asks the Court to modify the damages award to account for the
fact that the arbitrator allegedly used the wrong monthly premium amount to arrive at the total
award for continuation of coverage under U-Save's medical plan.  Specifically, U-Save
complains that the arbitrator accepted Barton's testimony that the total monthly cost of his
participation in U-Save's medical plan was $989.32, whereas Exhibit 34 from the arbitration
record showed that the actual cost of Barton's continuation coverage under COBRA was
$451.78.

Under Title 9 U.S.C. § 11(a), a court may modify or correct an award "[w]here there was
an evident material miscalculation of figures."  The Fifth Circuit has held that "an 'evident
material [mis]calculation' occurs 'where the record that was before the arbitrator demonstrates
an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on
that mistake by the arbitrator in making his award.'"  *Woods v. P.A.M. Transp. Inc.-L.U.*, 440 F.
App'x 265, 269–70 (5th Cir. 2011) (quoting *Prestige Ford v. Ford Dealer Computer Servs., Inc.*,
324 F.3d 391, 396 (5th Cir. 2003); *Valentine Sugars, Inc.*, 981 F.2d at 214).

9

Here, U-Save raised this issue in a post-arbitration motion to modify.  *See* Mot. to Modify [7-11].  Barton opposed the motion.  *See* Order [7-12] at 1.  And the arbitrator summarily rejected U-Save's position.  *Id.*  "Arbitrators need not provide reasons for their award.  If the award is rationally inferable from the facts before the arbitrator, the Court must affirm the award."  *Valentine Sugars, Inc.*, 981 F.2d at 214 (citation omitted).  The arbitrator obviously credited Barton's testimony and his post-arbitration submissions.  Further, it is not apparent from the face of this record that Exhibit 34's discussion of continued COBRA benefits fully accounts for the monthly cost of "continued participation . . . in all medical . . . insurance plans, programs or arrangements in which [Barton] was entitled to participate prior to the date of termination."  Employment Agreement [2-1] at 3.  In any event, the issue was disputed.

It may be that the arbitrator misconstrued the contract or the law, but U-Save has not met its burden of showing "an unambiguous and undisputed mistake of fact."  *See Valentine Sugars, Inc.*, 981 F.2d at 214 (emphasis added); *see also Bain v. Bank*, 539 F. App'x 485, 486 (5th Cir. 2013) (refusing to disturb arbitrator's award regarding value of incentive payments despite argument that arbitrator relied on "unambiguously inaccurate report").[4]

---

[4]Other "[c]ourts have construed literally the language of Section 11, relating to miscalculation of figures . . . as a ground for modification of an arbitration award. . . .  Where no mathematical error appears on the face of the award . . . an arbitration award will not be altered."  *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998) (quoting *Apex Plumbing Supply, Inc., et al. v. U.S. Supply Co.*, Civil No. AW96-3362, at 5 (D. Md. Feb. 24, 1997)).  The Fifth Circuit favorably cited *Apex Plumbing Supply, Inc.*, in *Prestige Ford*, holding that "there was no 'evident material miscalculation.'"  324 F.3d at 396.  But the Fifth Circuit did not expressly adopt the above language or explain the citation.  Under a literal reading of the statute, there was no "evident . . . miscalculation of figures" on the face of the arbitrator's award, so review would also be unavailable under this standard.

10

e.     Interest

U-Save argues that the arbitrator should not have awarded pre- or post-judgment interest because "the arbitration clause does not allow for interest, the Mississippi statute concerning prejudgment and post judgment interest does not authorize interest on arbitration awards, and Barton's claimed benefits due were not liquidated prior to trial."  Pl.'s Mem. [17] at 23.  But contrary to U-Save's position, the arbitration clause does not include a "plain and unambiguous" limit on the arbitrator's authority to award interest.  *21st Fin. Servs. LLC*, 747 F.3d at 336.  Its sole limitation on the arbitrator's authority is the prohibition on an award of punitive damages.  Thus, the arbitrator did not exceed his contractual authority in awarding pre- and post-judgment interest.

U-Save's remaining arguments are essentially that the arbitrator erred under Mississippi law in his interest award.  But "an arbitration award is not subject to vacatur or modification merely because of the arbitrator's error or misunderstanding with respect to the law."  *Woods*, 440 F. App'x at 269.  And "the award of prejudgment interest is not merely a matter of form, but goes to the merits of the controversy."  *Id.* at 270 (reversing order that modified pre-judgment interest).  The interest award provides no basis to vacate the award.

f.     Excess Award

Barton increased his damage calculations the Thursday before the Monday arbitration. U-Save took issue with the late disclosure during arbitration, and now argues that the arbitrator exceeded his authority by accepting the updated calculations.  The scope of the arbitrator's authority in this regard is found in the AAA Employment Arbitration Rules, which are adopted in the Employment Agreement.  *See* Employment Agreement [2-1] ¶ 13.  AAA Rule 5 states that

11

"[a]fter the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator."  Thus, the arbitrator acted within his contractual authority when he allowed the late amendment to Barton's claim.  The Court may not consider whether the arbitrator abused his discretion when applying that rule.

> g.      October 1, 2013 Contract Renewal

Finally, U-Save argues that the arbitrator erred in concluding that the Employment Agreement automatically renewed for a three-year term on October 1, 2013, entitling Barton to salary-based benefits through September 2016.  U-Save does not attempt to tie this supposed error to any statutory basis for vacating the award, and the Court finds no such basis.  Instead, in concluding that the agreement renewed on October 1, 2013, the arbitrator arguably interpreted the parties' contract.

In sum, U-Save disagrees with the arbitrator's findings.  But even assuming the Court credited some—or even all—of U-Save's constructions, U-Save has presented no basis for vacating or modifying the arbitration award under the Federal Arbitration Act.  The arbitrator acted within his contractual authority and arguably construed the Employment Agreement.  U-Save's Motion to Vacate is denied, and Barton's Motion to Confirm is granted.

> B.      The Motions for Sanctions

Barton has also filed two Motions for Sanctions.  In response to the first motion, U-Save disputed Barton's compliance with Federal Rule of Civil Procedure 11(c)(2)'s safe-harbor provision.  Apparently conceding the procedural deficiency, Barton filed his second motion, which complied with Rule 11(c)(2).  The Court deems the first motion moot and will consider only the second motion.

Asserting that U-Save's legal positions in the case have all been "frivolous," Barton seeks an award of attorneys' fees under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11.  Section 1927 permits the Court to assess attorneys' fees against an attorney "who . . . multiplies the proceedings in any case unreasonably and vexatiously."  "An award of attorneys' fees under

§ 1927 requires 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'"  *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 871 (5th Cir. 2014) (citing *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 180 (5th Cir. 2007)).

Under Rule 11, when a lawyer submits a pleading to the court, he/she certifies that any representation made therein "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; that the claims "are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b).

If the Court finds a Rule 11 violation, it may sanction the responsible attorney, law firm, or party; any sanction awarded "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  *Id.* R. 11(c)(4).  In considering whether an attorney has violated Rule 11, the Court considers "factual questions regarding the nature of the attorney's prefiling inquiry and the factual basis of the pleading or other paper," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990), and determines whether the

13

attorney in question "fulfilled [his] duty of reasonable inquiry into the relevant law." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993).

In his briefing on the motion for sanctions, Barton has not established bad faith by U-Save's attorneys in instituting this lawsuit or moving to vacate. Instead, he merely rehashes his arguments on the merits, asserting that U-Save's legal positions are frivolous and therefore justify an award of $23,193.75 in attorneys' fees against U-Save and its attorneys. The Court obviously agrees that U-Save's arguments lack merit. But it does not find that U-Save's lawyers failed to conduct reasonable inquiry. *See* Declaration of John B. Gillis [25-5]. Moreover, some of the issues were marginally debatable. The Court therefore denies the Motion for Sanctions while cautioning counsel that the bases for vacating an arbitration award are narrowly prescribed and motions to vacate should therefore be employed sparingly.

III.    Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendant/Counter-Plaintiff Robert M. Barton's Motion to Confirm Arbitration Award [7] is granted; Plaintiff/Counter-Defendant U-Save Auto Rental of America, Inc.'s Motion to Vacate Award [16] is denied; Barton's initial Motion for Sanctions [9] is denied as moot; and Barton's second Motion for Sanctions [22] is denied. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 12th day of February, 2016.

s/ *Daniel P. Jordan III*                    
UNITED STATES DISTRICT JUDGE