UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

U-SAVE AUTO RENTAL OF AMERICA, INC.                                              PLAINTIFF

v.                                                                 CIVIL ACTION NO. 3:15cv348-DPJ-FKB

ROBERT M. BARTON                                                                      DEFENDANT

ORDER

This case is before the Court on a number of post-judgment motions:  Plaintiff's Motion

to Quash Writ of Garnishment [33]; Defendant's Motion to Correct Judgment as to Prejudgment

Interest Award [37]; Plaintiff's Motion to Reconsider Ruling on Post Judgment Interest Award

and Alter or Amend Judgment [45]; Plaintiff's Motion to Quash Writ of Garnishment Directed at

Regions Bank [56]; Plaintiff's Motion to Stay Proceedings to Enforce Judgment [79];

Defendant's Motion for Issuance of Writ of Execution [107]; and Plaintiff's Motion to Quash

Writ of Garnishment Targeting Regions Bank [140].  The Court held a hearing on the matters on

May 2, 2016.  Having fully considered the parties' submissions and arguments, the Court rules

as follows.

I.        Defendant's Motion to Correct Judgment as to Prejudgment Interest Award [37]

In its February 12, 2016 Order [28], the Court confirmed the arbitration award entered in

favor of Defendant Robert M. Barton and against Plaintiff U-Save Auto Rental of America, Inc.

("U-Save").  The arbitrator awarded "prejudgment and post-judgment interest at the rate of 8 %

per annum."  Award [22-1] at 8.  Barton now files this motion under Federal Rule of Civil

Procedure 60(a), asking the Court to "amend the Final Judgment entered on February 12, 2016,

to specifically reflect August 22, 2013, as the start date for purposes of calculating prejudgment

interest . . . ."  Def.'s Mot. [37] at 3.

Rule 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "To be correctable under Rule 60(a), the 'mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or [scrivener] might commit, mechanical in nature.'" *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 193–94 (5th Cir. 2011) (quoting *In re Galiardi*, 745 F.2d 335, 337 (5th Cir. 1984); *Dura-Wood Treating Co., Div. of Roy O. Martin Lumber Co. v. Century Forest Indus., Inc.*, 694 F.2d 112, 114 (5th Cir. 1982)). In other words, "[a] Rule 60(a) motion 'can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.'" *Id.* at 194 (quoting *In re Galiardi*, 745 F.2d at 337; 11 Wright & Miller, Federal Practice & Procedure § 2854 (2d ed. 1977)).

The Court concludes that the "correction" Barton seeks is not the type Rule 60(a) covers because it remains unclear what Barton sought in arbitration and what the arbitrator awarded. In his March 2014 arbitration demand, Barton sought $949,736.30, plus arbitration costs and interest. Demand [11-4] at 1. Barton later clarified his damages calculation in two letters to U-Save's lawyers, both of which stated that "Barton seeks pre-judgment interest calculated as 8%" from the date of the last salary payment, *i.e.*, September 1, 2013. Oct. 8, 2014 Letter [7-9] at 2; Jan. 29, 2015 Letter [7-10] at 1–2. And he took that same approach in his pre-arbitration brief. *See* Barton's Pre-Arbitration Br. [11-5] at 10 ("Barton seeks pre-judgment interest calculated as 8% on [the amount of damages] from the date of the last salary payment through the date of the award in this case . . . .").

But Barton proposed a different trigger date in his post-arbitration Proposed Findings of

Fact and Conclusions of Law:

> Section 75-17-7 of the Mississippi Code provides for the assessment of
> prejudgment and postjudgment interest.  Prejudgment interest is an essential
> component of compensatory damages which is necessary to make an injured party
> whole.  In breach of contract cases, prejudgment interest is typically assessed
> from the date of the breach through the date of the award on a compounded basis.
> Post-judgment interest accrues on a compounded basis from the date of the award
> until such time as it is paid in full.  Section 75-17-7 grants discretion to the trial
> court to set the applicable rate of interest, but the Mississippi Supreme Court has
> routinely affirmed the use of an 8% interest rate for prejudgment and
> postjudgment awards.

Barton's Post-Arbitration Br. [7-2] at 30 (citations omitted).  This submission shifted the focus

from September 1, 2013—the date Barton was last paid—to an undefined date of first breach.

The focus shifted again with Barton's Proposed Award to the arbitrator, which included

"prejudgment interest at 8% compounded annually from December 1, 2014 . . . ."  Hrg. Ex. P1

[163].  Of course the arbitrator declined to adopt any of the various proposed accrual dates and

instead merely awarded "prejudgment and post-judgment interest at the rate of 8 % per annum."

Award [22-1] at 8.

Barton now argues for an even earlier accrual date.  As he correctly notes, the arbitrator

found that on "more than one occasion[]," U-Save "provided written notification to Barton that it

was terminating the relationship."  *Id.* at 6–7.  The arbitrator did not make a finding as to when

those "occasions" occurred or whether they constituted breaches.  Nevertheless, Barton argues

that U-Save breached its duties on those dates and that a simple review of the arbitration record

shows they occurred August 22, 2013, and September 6, 2013.  He further contends that the

earlier of these dates represents the correct accrual date.  Def.'s Mem. [38] at 6.

There are two big problems with all of this.  First, although Barton consistently used the phrase "pre-*judgment* interest"—which would accrue from the date of the breach through the date of a court's judgment—what he described during arbitration was actually pre-*award* interest—accruing from the date of the breach through the date of the arbitrator's award.  *Cf. Tricon Energy Ltd. v. Vinmar Inter., Ltd.*, 718 F.3d 448, 456 (5th Cir. 2013) (noting that distinction between post-judgment and post-award interest "makes a difference").  The arbitrator followed Barton's terminology while providing no clues as to whether he intended a distinction.  Second, the date from which the pre-judgment interest award was to accrue is simply not clear.  The arbitrator could have intended to award pre-judgment interest from any of the dates or events Barton suggested during arbitration.  Or he could have intended for pre-judgment interest to run from the date of the award through the date of any ultimate judgment entered after the filing of an action to confirm the award.

Stated simply, fixing the accrual date for pre-judgment interest involves legal and factual determinations that go well beyond the ambit of Rule 60(a).  Had this Court entered the order awarding pre-judgment interest without an accrual date, then perhaps Rule 60(a) would have offered an available avenue to remedy the oversight.  *See Aldon Industries, Inc. v. Don Myers & Associates, Inc.*, 547 F.2d 924 (5th Cir. 1977).  But in the present context, the Court does not know what the arbitrator intended and cannot simply insert an omitted finding.

What Barton really seeks is modification.  As U-Save notes, however, Barton did not ask the arbitrator to modify the award to provide the missing accrual date under Arbitration Rule 40.  Nor did he move this Court to modify the arbitration award under 9 U.S.C. § 11, and the time to

do so has now expired.  *See* 9 U.S.C. § 12 ("Notice of a motion to . . . modify . . . an award must be served upon the adverse party . . . within three months after the award is filed or delivered.").

 Instead, in his Counter-Claim to Confirm Arbitration Award, Barton asked the Court to "confirm the arbitration award in the form of a judgment and that it further *confirm* the amount and duration of prejudgment interest owed on the award."  Countercl. [4] at 5 (emphasis added). He went slightly farther in his memorandum, stating that "[t]he Court should further confirm that the award of prejudgment interest is to be computed from August 22, 2013, which is the date U-Save confirmed in writing that it was terminating Barton without 'Cause' and was therefore obligated to provide Section 5 benefits which it failed to do."  Def.'s Mem. in Supp. Mot. to Confirm Arbitration Award [8] at 20.

 From these bare requests, the Court did not appreciate that Barton was actually seeking modification of the arbitration award.  *See* L. U. Civ. R. 7(b) ("Any written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by this Rule.").  More significantly, the arbitrator never mentioned August 22, 2013 in his award.  So to "confirm" it as the accrual date would require review of the arbitration record followed by a finding of law and fact that this date—which is just one of many Barton has proposed—is the correct date.  While the Court is not unsympathetic to Barton's position, his request goes well beyond confirming an arbitration award and well beyond correcting a clerical-type mistake under Rule 60(a).  Barton's Rule 60(a) motion is therefore denied.

II.    Plaintiff's Motion to Reconsider Ruling on Post Judgment Interest Award and Alter or
       Amend Judgment [45]

       Turning to the Court's confirmation of the arbitrator's post-judgment interest award, U-

Save asserts that the Court's order on this point involved a legal error in view of the Fifth

Circuit's pronouncement in *Tricon* that "an arbitration panel may not establish a post-judgment

interest rate itself."  718 F.3d at 457 (internal quotation marks and citation omitted).  While it is

true that the applicable interest rate in federal court is found in 28 U.S.C. § 1961, a full reading

of *Tricon* does not support U-Save's argument.

       Significantly, *Tricon* recognizes that "parties may agree to submit the question of

postjudgment interest to arbitration."  *Id.* at 457.  And where

       an arbitrat[or] sets a postjudgment interest rate as a matter of contract
       interpretation, its award is entitled to almost absolute deference.  In such a case,
       the district court would be required to enforce the award even if the intent to
       contract around [the federal statutory interest rate] did not seem clear,
       unambiguous, and unequivocal to the court.

*Id.* at 458 (footnote omitted).

       The *Tricon* parties had submitted the issue of post-judgment interest to arbitration

because

       [t]heir agreement authorized arbitration for "[a]ny and all differences and disputes
       of whatsoever nature arising out of this Agreement."  Also, Tricon specifically
       asked for "post-judgment interest, as provided by the parties' contract," in its
       amended specification of claims for arbitration, and in its closing statement,
       Tricon demanded "post-judgment interest on its damages in the amount of 8.5%
       per annum."  Vinmar disputed Tricon's claim for interest, contending that there
       was "no written agreement or other authority authorizing Tricon's claim for
       interest."  Because the parties agreed to submit the issue of postjudgment interest
       to arbitration, the arbitration panel had the authority to award a non-statutory rate.

6

*Id.* at 458 (footnote omitted).  But the Fifth Circuit ultimately agreed with the district court that the arbitration panel had not unambiguously set a non-statutory rate of post-judgment interest where the panel had awarded "'post-award' rather than postjudgment' interest."  *Id.* at 459.

Here, as in *Tricon*, Barton asked the arbitrator to award him post-judgment interest at a rate other than the federal statutory rate.  *See* Barton's Post-Arbitration Br. [7-2] at 30; Hrg. Ex. P1 [163].  And U-Save has not directed the Court to any record evidence indicating that it objected to having that issue submitted to the arbitrator.  Under *Tricon*, the parties submitted the issue to the arbitrator, who therefore had the authority to award a non-statutory rate of post-judgment interest, which he did.

U-Save also directs the Court to *Campbell Harrison & Dagley, L.L.P. v. Hill*, 782 F.3d 240 (5th Cir. 2015).  In *Campbell*, the arbitration panel awarded the prevailing parties damages, attorney's fees, "and pre- and post-judgment interest of five percent per annum . . . ."  *Id.* at 243. The district court vacated most of the arbitration award, including "the award's providing a five-percent rate for post-judgment interest."  *Id.* at 244.  The Fifth Circuit affirmed, observing that the parties had not briefed the issue on appeal but, at oral argument, the prevailing parties "agreed that, should the award be reinstated in full, the district court on remand would . . . impose post-judgment interest under the federal rate."  *Id.* at 246.  So the issue was effectively conceded, making the Fifth Circuit's remand for "further proceedings . . . including . . . setting, pursuant to 28 U.S.C. § 1961, the rate for post-judgment interest," essentially dicta.  *Id.*

So *Tricon*, not *Campbell*, controls.  And under *Tricon*, the parties submitted the issue to the arbitrator.  This Court was therefore "required to enforce the award even if the intent to

contract around § 1961 did not seem clear, unambiguous, and unequivocal to the court." *Tricon*, 718 F.3d at 458.

U-Save has not demonstrated a right to relief from the Court's judgment under Rule 59(e). *See Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) ("Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or to present newly discovered evidence.'" (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). U-Save's Rule 59(e) motion is denied.

III.    Plaintiff's Motions to Quash [33, 56, 140]

U-Save has moved to quash three writs of garnishment [31, 82, 131] issued to Regions Bank. It makes two primary arguments in its motions: (1) the writs were not served pursuant to Federal Rule of Civil Procedure 4.1(a), which requires that process "must be served by a United States marshal or deputy marshal or by a person specially appointed for that purpose," and (2) the writs are "defective on [their] face as the judgment balance is misstated" given the outstanding questions with regard to pre- and post-judgment interest. Pl.'s Mem. [141] at 9.

Starting with service, U-Save relies on the Fifth Circuit's decision in *United States ex rel. Tanos v. St. Paul Mercury Insurance Co.*, 361 F.2d 838 (5th Cir. 1966). In *Tanos*, the Fifth Circuit affirmed the district court's decision to quash a writ of garnishment for improper service. There, the judgment creditor effected service of process of the writ using a Florida county sheriff pursuant to Florida Rule of Civil Procedure 1.3(c). The court noted that the applicable Federal Rule of Civil Procedure (then Rule 4(c)) provided that "[s]ervice of all process shall be made by a United States marshal, by his deputy, or by some person specially appointed by the court for that purpose." *Tanos*, 361 F.2d at 839. The court concluded that because Florida Rule 1.3(c) "is

8

not a rule peculiarly applicable to service of writs of garnishment," but rather "is a rule applicable generally to service of process in civil actions," Federal "Rule 4(c) . . . governs the service of writs of garnishment issued in a proceeding in a federal court . . . ."  *Id.*  So service by a Florida county sheriff was insufficient.

This case is distinguishable from *Tanos* because Mississippi has a statute that addresses the method of service "peculiarly applicable" in garnishment proceedings.  Section 11-35-9 of the Mississippi Code provides that "[a] writ of garnishment . . . shall be served as a summons is required by law to be executed . . . ."  And under Mississippi law, service of a summons is governed by Mississippi Rule of Civil Procedure 4, which permits service "by any person who is not a party and is not less than 18 years of age."  Miss. R. Civ. P. 4(c)(1).[1]

So while Barton resorted to service under Mississippi's generally applicable rule for service of process, he did so at the behest of the statute "peculiarly applicable to service of writs of garnishment."  *Tanos*, 361 F.2d at 839.  The Court concludes that service of the writs of garnishment was sufficient.  *See Gen. Elec. Capital Corp. v. The Jane R. Her Engines*, No. 97-1176, 2000 WL 825679 (E.D. La. 2000) (concluding that service of writ under Louisiana law

---

[1]U-Save asserts that even under Mississippi law, Barton's use of a private process server did not comply with Mississippi statutory law concerning service of a summons.  U-Save points to section 19-25-37 of the Mississippi Code, which explains that "[e]very sheriff, by himself or his deputy, shall from time to time execute all notices, writs, and other process, both from courts of law and chancery, and all orders and decrees to him legally issued and directed within his county . . . ."  But the statute does not say that a summons *must* be served by a sheriff or deputy, and another Mississippi statute makes it plain that "the form, issuance, *service*, waiver, return, amendment and time limits of [a summons] shall be governed by the Mississippi Rules of Civil Procedure."  Miss. Code Ann. § 13-3-5(1) (emphasis added).  So the garnishment statute requires a writ to be served as a summons is served, and section 13-3-5(1) explains that a summons is served pursuant to the Mississippi Rules of Civil Procedure, with which Barton complied.  U-Save's reliance on section 19-25-37 is misplaced.

was appropriate where statute regarding method of service in garnishment proceedings provided service "shall be made in the manner provided for the service of citation" (quoting La. Code Civ. Proc. art. 2412(C)).[2]

Even if service was insufficient, Regions—the party to which the three writs were directed—waived that insufficiency when it answered them.  *See* Answers [91, 113-2, 136]; *Y-D Lumber Co. v. Humphreys Cnty.*, 2 So. 3d 793, 796 (Miss. Ct. App. 2009) (citing *Roy v. Heard*, 38 Miss. 544, 545 (1860)).  And while the garnishment statutes provide that the debtor "may contest, in writing, the answer of the garnishee," they do not give the debtor the right to resuscitate a waived defense of insufficiency of process.  Miss. Code Ann. § 11-35-47; *cf. Nichols v. Tri-State Brick & Tile Co. Inc.*, 608 So. 2d 324, 332 (Miss. 1992) ("[W]here a statute enumerates and specifies the subject of things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned . . . ." (quoting *Sw. Drug Co. v. Howard Bros. Pharmacy of Jackson, Inc.*, 320 So. 2d 776, 779 (Miss. 1975)).  In sum, the manner in which the writs were served provides no basis for quashing them.

U-Save's remaining argument is that the writs are invalid because they reference an incorrect balance on the judgment.  As noted above, both parties moved to alter or amend with respect to the interest awards.  U-Save initially provided no authority to support its position that uncertainty regarding the amount of the judgment provides a basis for quashing an otherwise proper writ, but the Court permitted post-hearing briefs addressing the issue.  Having reviewed

---

[2]Under Louisiana law, "[c]itation is the official summons or notice to a defendant to appear in person or in responsive pleadings before the court."  La. Prac. Civ. Pretrial § 7:17.

10

those filings and the relevant authority, the Court concludes that this uncertainty does not require an order quashing the writs.

Section 11-35-23 of the Mississippi Code contemplates the possibility that the amount of the judgment underlying a writ of garnishment could be modified but does not indicate that such a change would render the writ invalid or ineffective:

> The court issuing any writ of garnishment shall show thereon the amount of the claim of the plaintiff and the court costs in the proceedings and should at any time during the pendency of said proceedings in the court a judgment be rendered for a different amount, then the court shall notify the garnishee of the correct amount due by the defendant under said writ.

Miss. Code Ann. § 11-35-23(2).  Similarly, in *John W. McGrath Corp. v. Vera CruzCia. Naviera, S.A.*, the court reversed the chancery court's decision to quash writs of attachment where the underlying judgment found the judgment debtor liable to the judgment creditor but did not specify an amount of damages.  256 So. 2d 505 (Miss. 1971).  The court explained that, rather than quashing the writs, "the chancery court should have taken the case under consideration and continued the case until" the amount of damages was fixed.  256 So. 2d at 510.

Here, as in *John W. McGrath Corp.*, "there is no contingency as to [U-Save's] liability. . . .  The only contingency . . . is the amount of this liability."  *Id.*  Under these circumstances, there is no basis for quashing the writs.  U-Save's motions to quash are denied.

IV.    Plaintiff's Motion to Stay Proceedings to Enforce Judgment [79]

U-Save's motion to stay proceedings asks the Court to halt all of Barton's judgment-enforcement efforts "pending the disposition of Barton's Rule 60 motion to correct judgment and U-Save's Rule 59(e) motion to reconsider and alter judgment."  Pl.'s Mem. [80] at 3.  The Court has now ruled on those two motions, so the motion to stay is denied as moot.

V.      Defendant's Motion for Issuance of Writ of Execution [107]

Finally, Barton asks the Court to issue a writ of execution regarding stock U-Save holds in Peakstone Financial Services, Inc.  In response, U-Save initially argued that "Barton improperly enrolled his federal court judgment on the judgment roll of Madison County, Mississippi since on the date on which he enrolled the judgment, the judgment was not a final judgment as the 14-day automatic stay mandated by Rule 62(a) of the Federal Rules of Civil Procedure had not expired."  Pl.'s Mem. [126] at 4.

U-Save provided no authority for its position, and Barton responded with a list of persuasive authority to the contrary.  Def.'s Reply [129] at 2–3 (collecting cases).  The Court concludes that Barton's recording of the judgment in Madison County before the 14-day period expired under Rule 62(a) does not impact the effectiveness of the enrolled judgment as a lien on U-Save's assets in Madison County.  *See Cadence Bank, N.A. v. Latting Road Partners, LLC*, No. 09-2540, 2010 WL 4261230, at *2 (W.D. Tenn. June 22, 2010) ("[G]enerally courts hold that the recording of a judgment and other similar actions do not violate Rule 62(a)'s automatic stay.") (collecting cases).

Though U-Save's original argument is not persuasive, it raised a new one during oral argument—that Barton did not strictly comply with the Mississippi statutes governing the recording of a foreign judgment, rendering the enrolled judgment ineffective to make the judgment a lien on U-Save's assets.[3]  Specifically, U-Save argues that because Barton enrolled a

---

[3]In its response, U-Save cited the code sections on which it relies—sections 11-7-191, 11-7-195, and 11-7-197 of the Mississippi Code—but for a different proposition:  that "[a] judgment must be enrolled on the judgment roll of the county where the judgment debtor's assets are located for the judgment to be a lien on the judgment debtor's assets."  Pl.'s Mem. [126] at 2.

copy of this Court's judgment itself, rather than an abstract of the judgment, the enrollment is fatally defective.

Section 11-7-197 of the Mississippi Code provides that a judgment entered by a United States District Court situated in Mississippi "shall not be a lien upon or bind the property of the defendant" within a Mississippi county "*until an abstract* thereof shall be filed in the office of the clerk of the circuit court of the county and enrolled on the judgment roll, in the manner and on the terms hereinbefore provided in Section 11-7-195." (Emphasis added).

Barton did not technically comply with this requirement, and the limited authority the Court has located indicates that the failure to file an abstract of the Court's judgment—rather than the judgment itself—with the Madison County Circuit Clerk makes the judgment ineffective as a lien against U-Save's property in Madison County. For example, in *Bergen v. State*, the Mississippi Supreme Court held:

> Manifestly, simply enrolling a foreign judgment on the judgment-roll is not sufficient to acquire a lien. The statute forbids a lien until certain conditions precedent are fulfilled. The necessary conditions precedent are: First, filing the abstract, duly certified, and payment of fees for filing, recording, and enrolling; second, filing the abstract, and recording it in a separate book kept for that purpose, noting on record the time of filing.

58 Miss. 623, 626 (1881); *see also In re Shavers*, 418 B.R. 589, 604 (Bankr. S.D. Miss. 2009) ("In order to acquire [] a lien, the judgment creditor must comply with the statutory mechanism provided for its creation. He must obtain a certified abstract of the judgment from the clerk of the court in which it was rendered, and enroll it in 'The Judgment Roll' book or books maintained by the circuit clerk in the county in which the property is located." (citations omitted)). Despite the belated nature of U-Save's argument, it appears correct. Moreover,

Barton can readily correct the error.  Therefore, Barton's motion for a writ of execution is denied without prejudice.

VI.     Conclusion

        The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Defendant's Motion to Correct Judgment as to Prejudgment Interest Award [37] is denied; Plaintiff's Motion to Reconsider Ruling on Post Judgment Interest Award and Alter or Amend Judgment [45] is denied; Plaintiff's Motions to Quash [33, 56, 140] are denied; Plaintiff's Motion to Stay Proceedings to Enforce Judgment [79] is denied as moot; and Defendant's Motion for Issuance of Writ of Execution [107] is denied without prejudice.

        **SO ORDERED AND ADJUDGED** this the 13th day of May, 2016.

                                                s/ *Daniel P. Jordan III*
                                                UNITED STATES DISTRICT JUDGE